# United States Court of Appeals for the Federal Circuit

---

**TEJA RAVI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1559

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01237-NBF, Senior Judge Nancy B. Firestone.

---

Decided: June 25, 2024

---

ANNA NATHANSON, Norris Law Group, PLLC, Washington, DC, argued for plaintiff-appellant. Also represented by AMY NORRIS.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY.

---

Before LOURIE, SCHALL, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

The allegations of fact we accept as true for purposes of this appeal are straightforward. Starting in March 2018, Ravi Teja Tiyagurra paid thousands of dollars to the "University of Farmington" to enroll as a student, expecting to take classes. At the time of his enrollment, Mr. Ravi was unaware that the University was not a university at all but had been formed and advertised to offer educational services for money—though not actually provide them—as an undercover operation of the United States Department of Homeland Security (DHS) to target fraud involving student visas. The government's operation eventually came to light, but the government neither provided the paid-for education nor gave Mr. Ravi his money back.

Mr. Ravi brought an action in the United States Court of Federal Claims (Claims Court) against the United States, alleging a breach of contract and an accompanying breach of the implied covenant of good faith and fair dealing. The government moved to dismiss the action for lack of subject-matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491, and for a failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. The Claims Court ultimately dismissed the complaint for lack of subject-matter jurisdiction, without reaching other issues. *Ravi v. United States*, 158 Fed. Cl. 775, 778 (2022) (*Claims Court Decision*). On appeal, we reverse the Claims Court's dismissal and remand for further proceedings.

I

The case comes to us on facts that have been alleged but not adjudicated. The allegations are as follows. In March 2018, Mr. Ravi, a citizen of India, enrolled in a graduate program at the University of Farmington through which he hoped to earn a master's degree in information

technology. At that time, Mr. Ravi was living in the United States and enrolled at a different university. When he enrolled at the University of Farmington, Mr. Ravi was informed by university administrators that he would receive a course schedule and be able to take courses. Despite contacting university administrators to ask about classes and assignments, Mr. Ravi never received a course schedule and ultimately did not attend any classes or complete any assignments. Yet Mr. Ravi paid the University of Farmington $12,500 in tuition. *See*, *e.g.*, J.A. 59 ¶ 22, 60 ¶ 30.

The University of Farmington presented itself to prospective and enrolled students as if it were a genuine university. It had a physical presence in Farmington Hills, Michigan, had a web presence that included a professional website and active social media accounts, and engaged in direct communication with prospective and enrolled students via postal and electronic mail. The University also advertised that it had credentials that included a state accreditation from the state of Michigan, a national accreditation, and a listing on the DHS list of certified schools. *See*, *e.g.*, J.A. 55–59 ¶¶ 1, 8–21, 445–46 ¶ 9.

Unbeknownst to Mr. Ravi at the time, however, the University of Farmington was a fictitious university. It had been established in 2016 by a component of DHS, *i.e.*, Homeland Security Investigations (HSI), which created the various indicia of a genuine university as a part of an undercover operation, Operation Paper Chase, aimed at identifying student visa holders who fraudulently maintained their student visa status and recruiters who assisted them in such fraud. *See*, *e.g.*, J.A. 55 ¶ 1, 56 ¶ 8, 445 ¶ 8. In January 2019, HSI closed the University of Farmington and began taking enforcement actions against enrollees of the University and recruiters who brought those enrollees to the University. *See*, *e.g.*, J.A. 55 ¶ 3, 60 ¶ 27, 452 ¶ 27. Mr. Ravi eventually departed the United States for India, and no enforcement action was taken against him. *See*, *e.g.*, J.A. 432 ¶ 1, 452 ¶ 28.

In September 2020, Mr. Ravi filed an action, on behalf of himself and other similarly situated enrollees of the University of Farmington, against the United States in the Claims Court. In the complaint and then the amended complaint filed in January 2021, Mr. Ravi alleged that he had entered into a contract with the University of Farmington (now known to be the government) for educational services when the University admitted him and he paid tuition to it, and on that basis he asserted that the University had breached that contract, and the contract's implied covenant of good faith and fair dealing, when it failed to provide him any classes or assignments. He alleged government authorization of the contracts at issue, which were a key part of the law-enforcement operation. J.A. 42–43 ¶¶ 39–49, 63–64 ¶¶ 39–51.

The government moved to dismiss Mr. Ravi's initial complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. *See* Rules of the Court of Federal Claims 12(b)(1), (b)(6). In relevant part, the government argued that the Claims Court lacks subject-matter jurisdiction, as defined by the Tucker Act, 28 U.S.C. § 1491, to hear Mr. Ravi's complaint because the government was acting in a sovereign capacity when it entered into the alleged contract with Mr. Ravi. J.A. 71. After Mr. Ravi filed his amended complaint, which became the operative complaint, the government filed a supplemental brief in support of its motion to dismiss or, alternatively, for summary judgment. Supplemental Brief, *Ravi v. United States*, No. 20-cv-01237 (Fed. Cl. July 2, 2021), ECF No. 24.

On March 16, 2022, the Claims Court dismissed the operative complaint, concluding that it lacks subject-matter jurisdiction. *Claims Court Decision* at 778. In particular, the Claims Court reasoned that its jurisdiction as set out by the Tucker Act does not extend to contracts entered into by the government when acting as a sovereign unless those contracts unmistakably subject the government to

damages in the event of breach; that the government was so acting here because it entered into the alleged contract in furtherance of an undercover law-enforcement operation; and that the alleged contract did not unmistakably subject the government to damages in the event of breach. *Id.* at 783–86. The Claims Court did not reach any other ground asserted by the government in its motion to dismiss or for summary judgment. The court entered final judgment against Mr. Ravi on March 16, 2022. J.A. 1.

Mr. Ravi timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

We review the Claims Court's dismissal for lack of subject-matter jurisdiction in this case de novo, *Biltmore Forest Broadcasting FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009), because the Claims Court based its ruling on the motion entirely on unchallenged jurisdictional facts, *see Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014), and did not adjudicate any challenges to jurisdictional allegations of fact, *see Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999). *See Claims Court Decision* at 779, 784 n.6. We accept the well-pleaded factual allegations as true. *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

As relevant here, the jurisdiction of the Claims Court is defined by the Tucker Act, which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). And "by giving the [Claims Court] jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (footnote omitted). "The Tucker Act, however, does not create substantive rights," which must be found in "other sources of law, like statutes or contracts." *Maine Community Health Options v. United States*, 590 U.S. 296, 322 (2020) (quotations and citations omitted).

This case involves the "express or implied contract with the United States" language of the Tucker Act. 28 U.S.C. § 1491(a)(1). It is well established that there is a strong general presumption that for a breach of a contract with the government, monetary remedies are available under the Tucker Act. *See Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011) ("[W]hen a breach of contract claim is brought in the [Claims Court] under the Tucker Act, the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required."); *Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001) ("It is no doubt also true that in the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement."); *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion) ("[D]amages are always the default remedy for breach of contract." (footnote omitted)).

This presumption, though strong, is not absolute. It is subject to a small number of exceptions. The exception that the government invokes here is one it traces to our predecessor court's decision (which is precedent for us) in *Kania v. United States*. 650 F.2d 264 (Ct. Cl. 1981); *see*

Government Response Br. at 22–25.[1] The Claims Court agreed with the government that *Kania* and its successors create an exception that covers this case. *See Claims Court Decision* at 783. We disagree.

We avoid the "sovereign capacity doctrine" label that the Claims Court used and that the government uses. Neither the Supreme Court nor this court has used the label to name the exception at issue, and the label is potentially misleading. Almost everything the federal government does, including renting office space, is in the service of some sovereign function. The label "sovereign capacity doctrine" risks disregarding, and in any event is not helpful in performing, what is the essential task: identifying the particular contractual acts of the government that fall outside the strong general rule that the federal government's contracts create obligations whose breach is remediable through monetary relief under the Tucker Act.

We conclude that under our precedents, and specifically under the key formulation in *Kania*, the money-in-exchange-for-education contract in this case is within the

[1] The government has not invoked this court's decision in *Rick's Mushroom Service, Inc. v. United States*, in which we held the Tucker Act inapplicable to a monetary-damages claim based on a particular "cost-share agreement" between the government and the plaintiff. 521 F.3d 1338, 1343–44 (Fed. Cir. 2008). Nor has the government invoked our decision in *Higbie v. United States*, in which we held that a confidentiality provision in a mediation agreement "itself provide[d] a [nonmonetary] remedy for the breach" of the provision, namely, exclusion "from proceedings unrelated to the mediation," which meant that (in the absence of anything to the contrary) no monetary remedy was to be available. 778 F.3d 990, 994 (Fed. Cir. 2015).

ordinary presumption of the availability of the Tucker Act monetary remedy.

A

1

*Kania* and its successors recognize that the Tucker Act remedy is not available for breach of certain government contracts whose subject is a promise about what is to happen or not to happen in another adjudicatory proceeding. Our cases articulate a key rationale for that conclusion: Tucker Act jurisdiction under such circumstances could easily impair the authority to address the matter possessed by the forum whose proceeding is the subject of the contract. In such circumstances, the matter of remedy is left to that forum, and the ordinary presumption of monetary relief under the Tucker Act is overcome (unless the particular contract itself clearly provides for such relief).

*Kania* itself starts by reiterating the general rule that remedies for contract claims against the government *may* be sought in the Claims Court pursuant to the Tucker Act. *Kania* identifies such general cases as "the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." 650 F.2d at 268. That formulation applies to the contract here: The government took Mr. Ravi's money in exchange for promising to deliver education services, and that transaction is one in which private universities engage.

When *Kania* goes on to identify a kind of contract that is outside the Tucker Act, it does not say anything to contradict the straightforward application to Mr. Ravi of the affirmative-availability formulation just set forth. The opinion states: "The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can

semantically be stated in terms of offer and acceptance or meeting of minds." *Id.* The opinion then specifies the circumstance before the court in *Kania* that warrants an exception: a prosecutor's agreement with a prospective witness in a separate criminal proceeding about whether the government would or would not prosecute the prospective witness in exchange for the prospective witness's good-faith testimony. *Id.* at 266. Thus, *Kania* puts on the non-Tucker Act jurisdiction side of the line (in the absence of a specific contract provision authorizing the Tucker Act remedy) an agreement whose subject was a promise about what will or will not occur in a different proceeding—more specifically, a criminal proceeding—in another adjudicatory forum.

In so holding, the court in *Kania* stressed that criminal proceedings take place in a separate adjudicatory forum, and that forum should be assumed to have responsibility for handling a dispute over an agreement about such proceedings, absent a specific contrary contract provision:

> The need for specificity is the greater because the role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court. It would be reasonable to expect that the court which is to police and, in appropriate cases enforce, agreements for plea bargains, or witness protection, or for immunity, will be the courts in which are or will be pending the criminal prosecutions to which the agreements relate. If this means that money damages for breach are nowhere available, this is the case in any claim area where the Congress has not seen fit to grant its consent to be sued. It is particularly unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials.

*Id.* at 268–69. In Mr. Ravi's case, the agreement is not about what would or would not occur in a criminal proceeding, and there was no such proceeding. Indeed, the agreement at issue here is not about what would or would not occur in any other proceeding: It is a purchase-and-sale-of-services agreement, where the service is education.

Just after this court's predecessor decided *Kania*, the same court reiterated the nature of the exception to Tucker Act jurisdiction recognized in *Kania*. In *Bloemker v. United States*, the court summarized *Kania* as holding that "Tucker Act contract liability does not extend to agreements, even if express [*i.e.*, as opposed to implied], relating to the conduct of criminal trials, unless their terms show that the parties intended to create a contract-type liability." 229 Ct. Cl. 690, 692 (1981). "The reason is that supervision of criminal cases presumptively and properly belongs to the criminal courts." *Id.*

We confirmed the narrow scope of *Kania*'s holding in our 2001 decision in *Sanders*, where we held to be outside the Tucker Act a claim of breach of a prosecutor's agreement with a defendant in a separate criminal proceeding about whether the prosecutor would support the defendant's release on bail in exchange for the defendant's meeting certain bail conditions. 252 F.3d at 1331–32. *Sanders*, like *Kania*, held Tucker Act jurisdiction inapplicable to an agreement whose subject was what is promised to happen or not to happen in a separate criminal proceeding. Relying on *Kania*, we reiterated that, "where the agreement is entirely concerned with the conduct of the parties in a criminal case," "a damages remedy is not ordinarily available." *Id.* at 1334–35. We also reiterated the rationale, relying on *Kania*, that it is "'unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials.'" *Id.* at 1335–36 (quoting *Kania*, 650 F.2d at 269).

Our 2001 decision in *Sommers Oil Co. v. United States* is indirectly relevant to, though not precedent governing, the limited scope of the *Kania* jurisdictional exception. 241 F.3d 1375 (Fed. Cir. 2001). The contract in *Sommers* was between a federal law-enforcement agent (in the Internal Revenue Service's Criminal Investigation Division) and a person (Sommers) cooperating with the government in a criminal investigation of a targeted third party; the agreement provided that, in certain transactions arranged with the government's knowledge that involved the target and the cooperator, the cooperator would be allowed to keep certain funds paid by the third party. *Id.* at 1377–78. The government intercepted some of those funds, and after the government no longer needed to keep those funds for use in the criminal case involving the target (not the cooperator), the cooperator sought the promised funds from the government, ultimately suing under the Tucker Act to obtain them. *Id.* As relevant, the Claims Court dismissed the contract claim on the merits, not under the *Kania* jurisdictional exception (though it cited the case), *Sommers Oil Co. v. United States*, 46 Fed. Cl. 303, 305–08 (2000), and this court reversed, also on the merits, *Sommers*, 241 F.3d at 1378–81. We stated: "If, as Sommers alleges, it has a legal right to the funds as the product of a contractual undertaking by the government to turn those funds over to Sommers, the fact that the government had a temporary need to use the funds as evidence in a criminal case does not defeat Sommers' right to obtain the funds after the government no longer needs them." *Id.* at 1378. The government did not invoke the *Kania* exception or argue for lack of jurisdiction, *see* Brief for United States, *Sommers Oil Co. v. United States*, 241 F.3d 1375 (Fed. Cir. 2001) (No. 00-5066), 2000 WL 33976357, and we did not raise a jurisdictional issue, *see Sommers*, 241 F.3d at 1378–81. Although our decision therefore is not precedent on the jurisdictional exception of *Kania*, it is noteworthy that we did not see a contract-jurisdiction issue even though the agreement was

one entered into by law-enforcement personnel as part of a criminal investigation.

2

Several decisions of the Claims Court are worth brief mention. They reflect some of the considerations evident in our precedents, as we have just discussed. But they are not precedential for us, and all we need to say is that we see nothing persuasive in them to expand the *Kania* exception, insofar as this case is concerned, beyond what we have described from our precedents.

The Claims Court in *Stovall v. United States* denied an assertion of a *Kania* objection to jurisdiction and in doing so discussed *Kania* and *Sanders*. 71 Fed. Cl. 696, 698–702 (2006). The court concluded that, if *Kania*'s distinction between what is covered by the Tucker Act and what is not is described in terms of a "proprietary" versus "sovereign" distinction, then the latter "necessarily is narrow in scope and, importantly, does not include every action taken by the government in its 'sovereign capacity,'" and the former "is relatively broad" in scope. *Id.* at 699 (footnote omitted). The court characterized *Sanders* as "clarif[ying] that an agreement falls within the excluded sovereign realm only where it is the sort that can ***only*** be executed by the sovereign," *id.* at 698 (footnote omitted), pointing to the focus on various kinds of agreements concerning criminal proceedings, *id.* at 698–99.

Similarly, *Trudeau v. United States*, which found a lack of Tucker Act jurisdiction, follows the *Kania* reasoning but extends it in a limited way. 68 Fed. Cl. 121 (2005), *aff'd*, 186 F. App'x 998 (Fed. Cir. 2006). The relevant agreement in *Trudeau* was an agreement, embodied in a stipulated district court order, between the Federal Trade Commission (FTC) and the subject of a civil-enforcement action brought by the FTC in district court, the agreement constraining what the parties could say publicly about wrongdoing on the part of the subject. *Id.* at 122–23, 129–31. The

Claims Court in *Trudeau* held that it lacked jurisdiction to hear the subject's damages claim for breach of the agreement. It effectively applied *Kania* to an agreement that was actually part of a civil rather than a criminal case, explaining that the civil case at issue was one that, by statute, only the government could initiate (to protect the public). *Id.* at 127–30. The *Trudeau* court also referred to *Awad v. United States*, 61 Fed. Cl. 281 (2004), which involved a contract concerning the uniquely sovereign functions of granting citizenship and issuing passports. *See Trudeau*, 68 Fed. Cl. at 129.

Finally, we note the Claims Court's decision in *Silva v. United States*. 51 Fed. Cl. 374, *aff'd*, 51 F. App'x 12 (Fed. Cir. 2002). *Silva* involved an agreement between an illegal importer of birds and a person cooperating with the government (who was assumed but not adjudicated to be in privity with the government), the latter to care for the birds. *Id.* at 375–76. The importer pleaded guilty to illegal importation, then sued to recover some of the birds at issue. The Claims Court held that the Tucker Act was unavailable based on the *Kania* exception. *Id.* at 376–79. In doing so, the court stressed the availability of avenues for the importer to press his agreement-based grievance in the district court, the forum of the criminal case. *Id.* at 378–79. We affirmed the Claims Court in a brief nonprecedential decision that also refers to the interaction with a different proceeding in a different adjudicatory forum. *See Silva v. United States*, 51 F. App'x 12, 14 (Fed. Cir. 2002) ("[T]he supervision of criminal cases properly belongs to the courts of general jurisdiction—not the [Claims Court]."). We need not further explore the correctness of the result in *Silva*, whose facts are quite different from those of the case now before us.

B

Mr. Ravi alleges that he entered into a contract with the government for the provision of educational services,

for which he paid thousands of dollars, and he alleges that the government breached that contract by not providing him those services (or returning the money). We must accept those allegations at this stage of the case. It is clear, taking those allegations as a given, that the government engaged in the sale of services such as private parties could also engage in among themselves, bringing this case within the class of cases that, as *Kania* itself says, "Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued." 650 F.2d at 268. And this case does not fall into the narrow exception carved out by *Kania* and its successors. The contract here does not concern what is promised to happen or not to happen in a different proceeding in another adjudicatory forum, criminal or otherwise. The *Kania* exception to the strong presumption of Tucker Act availability is therefore inapplicable.

In so ruling, we do not doubt, of course, that the government entered into the contract at issue in order to carry out a sovereign function of discovering criminal activity it might then prosecute. But that is not the right focus of the inquiry. The same would be true of a lease the government entered into to set up an office to use in carrying out its undercover operation. The focus of the *Kania* exception, in our precedent, has been on the particular agreement and its subject, not the overall activity of which the agreement is a part. The government itself accepts that a contract between a private party and the government to build a prison is a contract enforceable by Tucker Act suit though the purpose of the contract is to carry out a sovereign function. Government Response Br. at 28; *see Bailey v. United States*, 54 Fed. Cl. 459, 483 (2002). What matters, as *Kania* says, is whether the particular agreement (in the service of a sovereign function) is of a kind that private parties form, such as to buy and sell goods or services. The agreement alleged here is such an agreement. We conclude that the Claims Court had jurisdiction pursuant to the Tucker Act

over the agreement alleged here. The jurisdictional dismissal must be reversed.

III

We remand the case for further proceedings. We do not definitively decide other grounds not reached by the Claims Court but raised here by the government as alternative bases to affirm. But we briefly address certain aspects of those and other issues noted in the briefs before us that are likely to arise, and warrant further exploration, on remand.

First, Mr. Ravi concedes that he would not be entitled to recovery for the breach of his alleged contract with the government if he entered into that agreement with the understanding that it was an illegal contract. Ravi Reply Br. at 10. We agree that illegal contracts are unenforceable. *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986). Thus, on remand, the issue of Mr. Ravi's intent when he entered into the contract will be a matter for the Claims Court to decide.

Next, the government argues that the Claims Court does not have jurisdiction here because the complaint, properly construed, does not allege a breach-of-contract claim but only a tort claim, which the Tucker Act excludes from the Claims Court's jurisdiction. Government Response Br. at 30; *see* 28 U.S.C. § 1491(a)(1); *Rick's Mushroom Service*, 521 F.3d at 1343. We disagree. Even if the complaint asserts some facts that could give rise to a tort claim, the complaint does not assert a tort claim, and it squarely and properly asserts a breach-of-contract claim, along with a second contract-based claim for breach of the duty of good faith and fair dealing. *See* J.A. 63–64 ¶¶ 39–51; Ravi Reply Br. at 12. The government, in this court, has not cited anything supporting the conclusion that, in the present circumstances, the Claims Court lacks jurisdiction over the complaint. We note our repeated recognition that "[i]f contractual relations exist, the fact that the

alleged breach is also tortious does not foreclose Tucker Act jurisdiction." *Fountain v. United States*, 427 F.2d 759, 761 (Ct. Cl. 1970) (citing *Burtt v. United States*, 176 Ct. Cl. 310, 314 (1966)); *see Olin Jones Sand Co. v. United States*, 225 Ct. Cl. 741, 745 (1980); *San Carlos Irrigation & Drainage District v. United States*, 877 F.2d 957, 960 (Fed. Cir. 1989); *Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992); *Awad v. United States*, 301 F.3d 1367, 1374 (Fed. Cir. 2002); *cf. Taylor v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020) ("As a substantive-law matter, we have recognized that 'the same operative facts may give rise to both a taking and a tort.'" (quoting *Moden v. United States,* 404 F.3d 1335, 1339 n.1 (Fed. Cir. 2005))); *El-Shifa Pharmaceutical Industries Co. v. United States*, 378 F.3d 1346, 1353–54 (Fed. Cir. 2004).

Finally, the government argues that the complaint does not adequately plead the necessary elements to establish a Tucker Act contract claim. Government Response Br. at 33. In particular, the government contends that the complaint does not adequately plead at least two elements required to establish a contract with the government: (1) that the government intended to contract and (2) that the government representative whose conduct is relied upon to form the contract had actual authority to bind the government in the alleged contract. *See*, *e.g.*, *Trauma Service Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (reciting the general requirements for a binding contract as "1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance" and "[w]hen the United States is a party . . . the [g]overnment representative whose conduct is relied upon must have actual authority to bind the government in contract." (quotations and citations omitted)). The government's two-part argument faces obstacles in both parts, for related reasons.

As to the intent element, the government relies on the notion that, because it was only pretending to operate a university, there could not have been intent to contract on its part, even though it took (and has kept) the money Mr. Ravi he paid for the offered education, and it makes that assertion even accepting the assumption, required at the present stage of the case, that Mr. Ravi intended to obtain the education for which he was paying. The argument is that even when there is an objectively clear offer and acceptance, with acceptance in the form of paying money to the offeror, there is no contract enforceable against the offeror, for want of mutuality of intent, as long as the offeror had its fingers crossed behind its back when making the offer and accepting the money. In its brief to us, the government has not persuasively demonstrated by its citation of a few opinions (whose facts are not discussed) that such a holding has been reached in on-point precedents. *See* Government Response Br. at 34–35. And the argument faces obstacles that would have to be overcome, including from the many authorities that focus, for contract formation, on the presence of an objectively clear offer and acceptance. *See Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) ("To satisfy its burden to prove such a mutuality of intent, a plaintiff must show, by objective evidence, the existence of an offer and a reciprocal acceptance."); *see also* Restatement (Second) of Contracts § 18 (Am. L. Inst. 1981); 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 4:1 (4th ed. 1990).[2]

As to the authority element, the government argues that the government representatives making the offer of

---

[2] Mr. Ravi invokes principles of quantum valebant and quantum meruit recognized in, *e.g.*, *Amdahl*, 786 F.2d at 393. *See* Ravi Reply Br. at 17. We leave consideration of those principles, along with others, for remand.

education lacked authority to bind the government in contract. This argument depends on the same logic that the government offers as to the intent element—that the government was only pretending. The government has not disputed before us that the agents uttering the words of offer and accepting the money in exchange had full authority to do exactly that—*i.e.*, that the relevant government superiors were on the same page with the agents making the expressed promises, having "authority to *make the promise* in question." *Sommers*, 241 F.3d at 1380 (emphasis added). Mr. Ravi makes adequate allegations of that authority. *See*, *e.g.*, J.A. 63 ¶¶ 39–45. The government has not contended here that there was any difference in understanding between the superiors and agents regarding the making of the promise, only that both never intended to keep it. And the government has not cited on-point authority reaching a conclusion of no authority for contracting on those facts.

The issues raised in this brief discussion warrant further attention on remand, along with any other issues that bear on the contract claims.

IV

The dismissal for lack of subject-matter jurisdiction is reversed. The matter is remanded for further proceedings consistent with this opinion.

The parties shall bear their owns costs.

**REVERSED AND REMANDED**